1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLETA HADDOX, individually and on behalf of B.S. and D.S. minors, OTIS HADDOX, individually and on behalf of similarly situated class of persons, and VINCENT ANDREWS, individually,<br><br>            **Plaintiff,**<br><br>      v.<br><br>CITY OF FRESNO, CHIEF JERRY DYER, DOES 1 through 10, inclusive,<br><br>            **Defendants.** | 1:07-CV-00241-OWW-SMS<br><br>MEMORANDUM DECISION AND ORDER RE GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. 15) |

## 1.   INTRODUCTION

Defendants City of Fresno ("Fresno") and Chief Jerry Dyer ("Chief Dyer") bring this motion to dismiss against Plaintiffs Arleta Haddox's ("Arleta"), B.S.' ("B.S."), D.S.'("D.S."), Otis Haddox's ("Otis") and Vincent Andrews' ("Andrews") complaint under Fed. R. Civ. P. 12(b)(6).

## 2.   PROCEDURAL BACKGROUND

The original complaint was filed on February 13, 2007. (Doc. 1, Original Complaint.)  An amended class action complaint was filed on June 12, 2007. (Doc. 12, Amended Class Action Complaint ("Complaint").)  Defendants moved to dismiss on July 2, 2007 Plaintiff Arleta's and Andrews' entire case and moved to dismiss

**1**

1  on the basis of qualified immunity. (Doc. 15, Motion to Dismiss.)

2  Plaintiffs opposed the motion on August 10, 2007. (Doc. 16,

3  Opposition.)  This matter was heard on August 27, 2007.

### 3.   __FACTUAL HISTORY__

5      On November 13, 2006 between 6:00 and 7:00 p.m., City of

6  Fresno police officers, Defendants Does 1 through 10, allegedly

7  initiated a traffic stop without probable cause on the parked

8  vehicle occupied by Plaintiffs. (Doc. 15, Motion to Dismiss, ¶

9  3.)  Plaintiffs contend that Plaintiff B.S. was driving

10 Plaintiffs D.S. and Otis, in a vehicle owned by Plaintiff

11 Andrews.  All Plaintiffs are person of color and B.S. and D.S.

12 are minors.

13     During their drive to a relative's house, B.S., D.S. and

14 Otis became aware they were being followed by a Fresno Police

15 Department vehicle for a distance of approximately two miles.

16 B.S., D.S. and Otis allege that this created fear, apprehension

17 and severe emotional distress for all occupants of the vehicle.

18 (Doc. 12, Complaint, ¶¶ 20-24.)  Plaintiffs contend that upon

19 reaching their destination, after their vehicle was parked, a

20 Fresno Police Department vehicle activated its emergency lights

21 and verbally warned the occupants of the vehicle that "Whoever

22 moves will get shot!" which terrified Plaintiffs who were in the

23 vehicle. (Doc. 4, Complaint, ¶¶ 25-26.)

24     During the traffic stop, City of Fresno police officers

25 allegedly verbally threatened Plaintiffs with deadly force,

26 handcuffed and physically mistreated them. (Doc. 15, Motion to

27 Dismiss, ¶ 3.)  Plaintiffs allege that B.S., who suffers from

28 asthma was terrified as a result of the above incidents and was

**2**

unable to breathe.  After parking the vehicle and being verbally
warned/threatened she reached for her asthma pump in response,
and contends that this action was interpreted by Doe 1, a City of
Fresno policeman, as a threat and he drew his service weapon,
pointing it at B.S.  Plaintiffs allege that Doe 1 then pulled
B.S. from the vehicle, shoved her to the ground, handcuffed and
placed her in the Fresno Police Department vehicle. (Doc. 12,
Complaint, ¶¶ 26-29.)  Plaintiffs also allege that a City of
Fresno policeman, identified as Doe 2, then ordered a police dog
to sniff the vehicle for illegal narcotics, as part of a "general
interest in crime control." (Doc. 12, Complaint, ¶ 30.)

Plaintiff Otis alleges he receives disability compensation
as he is disabled and suffers from ulcerative sores on his legs.
Plaintiffs allege that a City of Fresno policeman, identified as
Doe 3, drew his service weapon on Otis, pulled Otis from the
vehicle by his coat causing him to be choked, handcuffed and
placed him in the Fresno Police Department vehicle. (Doc. 12,
Complaint, ¶¶ 30-31.)  Plaintiffs allege that D.S., age 14, was
terrified.  A City of Fresno policeman, identified as Doe 4, then
drew his service weapon on her and shouted "Keep your hands up or
I will shoot." (Doc. 12, Complaint, ¶ 32.)  D.S. exited the
vehicle at gunpoint and upon getting to her knees was pushed
further to the ground by Doe 4 and then handcuffed and placed in
the Fresno Police Department vehicle.

Plaintiffs assert that B.S., D.S. and Otis were detained for
one and half hours for driving without a driver's license, in

**3**

1  violation of California Vehicle Code § 12801.5(e)[1].  Plaintiffs
2  allege that they were also falsely accused of not having the
3  required registration documentation in the vehicle. (Doc. 12,
4  Complaint, ¶¶ 33-35.)

5      Plaintiff Andrews, owner of the vehicle, alleges that at the
6  scene of the incident, he offered to retrieve the registration
7  documentation from the vehicle but the Fresno police officers
8  denied him access and his vehicle was subsequently towed and
9  impounded, requiring him to pay a fee to retrieve the vehicle.
10 Plaintiff Andrews claims that he has proof of the registration
11 documentation being in the vehicle at the time of the alleged
12 incident, citing a recently issued traffic ticket that does not
13 state any such "document deficiency" existed. (Doc. 12,
14 Complaint, ¶¶ 41-46.)

15     Plaintiffs also contend that Arleta suffered extreme
16 emotional distress upon hearing a City of Fresno policeman shout,
17 "If you drop your hands you will be shot" directed at her child
18 Plaintiff D.S., through a friend's cell phone, who had the cell
19 phone at the scene. (Doc. 12, Complaint, ¶¶ 36-39.)  Chief Dyer
20 was acting Chief of Police at the time of the alleged incident
21 for the Fresno Police Department.

22              **4.  STANDARD OF REVIEW**

23 **A.   12(b)(6) Motion**

24     Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss
25 may be made if the plaintiff fails "to state a claim upon which

26

27    [1] The California Vehicle Code § 12801.5 provides that "a peace officer
   shall not detain or arrest a person solely on the belief that the person is an
   unlicensed driver, unless the officer has reasonable cause to believe that
28 person is under the age of 16 years. *Cal. Veh. Code § 12801.5(a)*.

**4**

1  relief can be granted." However, motions to dismiss under Fed.

2  R. Civ. P. 12(b)(6) are disfavored and rarely granted. *Gilligan*

3  *v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

4  In deciding whether to grant a motion to dismiss, the Court

5  "accept[s] all factual allegations of the complaint as true and

6  draw[s] all reasonable inferences" in the light most favorable to

7  the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

8  Cir. 1999); see also *Rodriguez v. Panayiotou*, 314 F.3d 979, 983

9  (9th Cir. 2002).  A court is not "required to accept as true

10 allegations that are merely conclusory, unwarranted deductions of

11 fact, or unreasonable inferences." *Sprewell v. Golden State*

12 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The question before

13 the court is not whether the plaintiff will ultimately prevail;

14 rather, it is whether the plaintiff could prove any set of facts

15 in support of his claim that would entitle him to relief. *See*

16 *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint

17 should not be dismissed unless it appears beyond doubt that

18 plaintiff can prove no set of facts in support of his claim which

19 would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d

20 977, 980 (9th Cir. 2002)(citations omitted).

21                    **5.   FEDERAL CLAIMS**

22 **A.   CHIEF DYER SUED IN HIS OFFICIAL CAPACITY**

23      Plaintiffs bring suit for § 1983 and § 1985(3) claims

24 against Defendant Chief Dyer in his official capacity of Chief of

25 Police.  This is redundant as Defendant Chief Dyer is employed by

26 the City of Fresno Police Department, an agency managed, directed

27 and controlled by the City of Fresno, a named Defendant in the

28 Complaint.  Suing state officials in their official-capacities

**5**

1  are treated as suits against the state. *Kentucky v. Graham*, 473
2  U.S. 159, 166 (1985); *Doe v. Lawrence Livermore Nat'l Lab.*, 131
3  F.3d 836, 839 (9th Cir. 1997).  "1983 claims against government
4  officials in their official capacities are really suits against
5  the governmental employer because the employer must pay any
6  damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 fn. 8 (9th
7  Cir. 2002).  In such suits, the real party in interest is the
8  entity for which the official works. *Hafer v. Melo,* 502 U.S. 21,
9  25 (1991).  "As long as the government entity receives notice and
10 an opportunity to respond, an official-capacity suit is, in all
11 respects other than name, to be treated as a suit against the
12 entity." *Graham*, 473 U.S. at 166.

13      By contrast, "[p]ersonal-capacity suits seek to impose
14 personal liability upon a government official for actions [taken]
15 under color of state law." *Id.* at 165.

16      Therefore, Plaintiffs' suit against Defendant Chief Dyer in
17 his official capacity for causes of action under Section § 1983
18 and § 1985(3) is **DISMISSED WITHOUT LEAVE TO AMEND** as it is
19 redundant.

20 **B.   FIRST CLAIM: § 1983 EXCESSIVE FORCE - QUALIFIED IMMUNITY
         DEFENSE**
21
22      Defendants invoke the defense of qualified immunity against
23 Plaintiffs B.S.', D.S.' and Otis' first cause of action of
24 excessive force under the Fourth Amendment.  Qualified immunity
25 grows out of the policy concern that few individuals would enter
26 public service if they risked personal liability for their
27 official decisions. *Harlow v. Fitzgerald*, 457 U.S. 800, 814
28 (1982). The immunity protects "all but the plainly incompetent or

**6**

those who knowingly violate the law," *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), and "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Qualified immunity is not a defense on the merits; it is an "entitlement not to stand trial or face the burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

Deciding qualified immunity entails a two-step analysis. First, the threshold question a court must ask is, taken in light most favorable to the party asserting the injury, do the facts alleged show the officers' actions resulted in a constitutional violation. If this threshold question is answered in the affirmative, then the qualified immunity issue is addressed. *Robinson v. County of Solano,* 278 F.3d 1007, 1012-1013 (9th Cir. 2002); *Katz v. United States*, 194 F.3d 962 (9th Cir. 1999), *rev'd,* 533 U.S. 194 (2001). The court must then inquire whether the right violated was "clearly established" by asking whether a reasonable officer could believe that the defendant's actions were lawful in the situation confronted. *See Katz*, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It is not enough that there is a general proposition on action that violates a right, it must be "clearly established" in a more particularized manner. *Katz*, 533 U.S. at 201-202.)

**I.   Constitutional Violations and Qualified Immunity**

Plaintiffs sue Defendants under 42 U.S.C. § 1983 claiming

**7**

constitutional violations of their Fourth and Fourteenth
Amendment rights. "Section 1983 provides for liability against
any person acting under color of law who deprives another 'of any
rights, privileges, or immunities secured by the Constitution and
laws' of the United States." S. Cal. Gas Co. v. City of Santa
Ana, 336 F.3d 885, 887 (9th Cir. 2003)(quoting 42 U.S.C. § 1983).
"The rights guaranteed by section 1983 are 'liberally and
beneficently construed.'" *Id.*(quoting *Dennis v. Higgins*, 498 U.S.
439, 443 (1991)).  Pursuant to 42 U.S.C. § 1983, Plaintiffs may
bring a civil action for deprivation of rights under the
following circumstances:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects,
> or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for
> redress, except that in any action brought against a
> judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall
> not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable. For
> the purposes of this section, any Act of Congress
> applicable exclusively to the District of Columbia
> shall be considered to be a statute of the District
> of Columbia.

To establish liability under § 1983, a plaintiff must
show (1) that he was deprived of a right secured by the
United States Constitution or a federal law and (2) that
the deprivation was effected "under color of state law."
*Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

   **a.   § 1983 Excessive Force in Violation of the
         Fourth Amendment**

Plaintiffs allege that they were deprived of their

**8**

constitutional right to be free from excessive force under
the Fourth Amendment.  "[T]he fundamental premise that the
use of force to effect an arrest is subject to the Fourth
Amendment's prohibition on unreasonable seizures." *Chew v.
Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).  The *Chew* Court
describes excessive force factors to be taken into
consideration in determining reasonableness under a claim
of excessive force under the Fourth Amendment: "whether a
warrant was used, whether the plaintiff resisted or was
armed, whether more than one arrestee or officer was
involved, whether the plaintiff was sober, whether other
dangerous or exigent circumstances existed at the time of
the arrest, and the nature of the arrest charges." 27 F.3d
at 1441 n.5.  The analysis proceeds in three steps. *Miller
v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003).  First,
an assessment is made into the gravity of the particular
intrusion on Fourth Amendment interests by evaluating the
type and amount of force inflicted.  Second, the importance
of the government interest at stake is assessed by
evaluating: (1) the severity of the crime at issue, (2)
whether the suspect posed an immediate threat to the safety
of the officers or others, and (3) whether the suspect was
actively resisting arrest or attempting to evade arrest by
flight. *Id.*  Third, the gravity of the intrusion on the
individual is balanced against the government's need for
the intrusion to determine whether it was constitutionally
reasonable. *Id.*  The Supreme Court has cautioned that in
such an analysis, "careful attention to the facts and

**9**

1  circumstances of each particular case" is to be undertaken.
2  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

3      Plaintiffs contend that one or more Defendants in a
4  Fresno police vehicle verbally threatened them without any
5  provocation, wrongdoing or probable cause.  After being
6  followed and then subjected to verbal threats by
7  Defendants, B.S. suffered an asthma attack and reached for
8  her pump.  Plaintiffs contend that B.S.' action was
9  perceived as a threat that precipitated Defendants to pull
10 their service weapons on Plaintiffs.  B.S. and Otis, both
11 allegedly unarmed and unresisting, were pulled from the
12 vehicle by officers with drawn guns.  Otis, who was
13 disabled and suffering from ulcerative sores on his legs
14 was choked in the process.  The youngest of the Plaintiffs,
15 D.S., 14 years old, unarmed and unresisting, was verbally
16 threatened she would be shot if her hands were not up. She
17 was then forced out of the vehicle at gunpoint and ordered
18 to get on her knees where Defendant Doe 4, pushed her to
19 the ground.  She was then handcuffed and placed in the
20 Fresno Police vehicle.

21     All three Plaintiffs were detained for one and half
22 hours on account of alleged "document deficiencies."
23 Plaintiffs were then charged with minor traffic violations
24 (driving without a license and lack of registration
25 documents in the vehicle).  B.S. admits she did not a have
26 driver's license.  Plaintiffs' contend however that
27 Defendants falsely stated there were no registration
28 documents in the vehicle at the time of the alleged

**10**

1  incident.

2      The City of Fresno police officers present at the scene

3  of the alleged incident on November 13, 2006 did not

4  formally arrest B.S., D.S. and Otis, but while conducting a

5  traffic stop, detained Plaintiffs at gunpoint, shouted,

6  pushed, choked, handcuffed and kept them for over an hour

7  without probable cause.  A trier of fact could find such

8  conduct by Fresno Police officers excessive, unreasonable

9  and unjustified.

10      In *Robinson v. County of Solano*, 278 F.3d 1007 (9th

11  Cir. 2002), the mere pointing of a gun at an individual not

12  resisting arrest, holding the individual in a police

13  vehicle for 15-30 minutes and never officially arresting

14  the invididual, was found to be excessive force.  Though in

15  *Robinson*, the individual was never charged with a crime,

16  the plaintiff was also not pulled out of a vehicle at

17  gunpoint, verbally threatened or detained for one and half

18  hours for minor traffic violations as Plaintiffs allege,

19  providing support for their excessive force claim.  Under

20  the Fourth Amendment, failing to produce a driver's license

21  and registration papers would not justify the conduct

22  alleged.  The Complaint does not allege any facts that

23  would provide reasonable suspicion for Defendants' search

24  and seizure of Plaintiffs and their vehicle.  All

25  Plaintiffs were unarmed, and none, according to the facts

26  alleged in the Complaint, were actively attempting to evade

27  arrest or resisting the officers.  Further, the officers

28  outnumbered Plaintiffs at the scene of the alleged

**11**

incident, at least five officers were identified to the three occupants in the vehicle.  Even assuming that B.S. reached for her asthma pump shortly after Defendants shouted "Whoever moves will get shot!" (Doc. 12, Complaint ¶ 25.), the reasonableness of this interaction will have to be decided by a trier of fact.

Reviewing the alleged facts in light of such factors and assuming facts alleged are true supports a finding that the use of force applied in this case was excessive.  Under the "objective reasonableness" standard of *Graham*, Plaintiffs have properly alleged a Fourth Amendment claim of excessive force.

### i. Qualified Immunity

The qualified immunity analysis begins with whether the law is "clearly established" such that a reasonable official could believe that his or her actions were lawful. *See Katz*, 533 U.S. at 194-195.  The inquiry is more particularized and thus more relevant than the general proposition that excessive use of force by an officer is contrary to the Fourth Amendment (under objective standards of reasonableness).  "Reasonable mistakes can be made as to the legal constraints on particular police conduct" *Id.* at 195.

At the time of the alleged incident on November 13, 2006, it was clearly established law that the use of excessive force is a violation of the Fourth Amendment. *Id.* at 202 *(*"if it is excessive of reasonableness").

There is a factual dispute over whether the force was

**12**

1  of the amount used by Defendants.  Defendants' Mot. to.

2  Dismiss omits any reference to the alleged choking, pushing

3  and drawing of a weapon from their description of alleged

4  facts. (Doc. 15, Motion to Dismiss, ¶ 4.)  And while

5  Defendants provide case law to support the reasonableness

6  of each type of force Defendants allege was used on the day

7  of the incident, Defendants chose to ignore the entire

8  description in the Complaint.

9       Assuming, as is required that Plaintiffs' facts are

10  true, the allegations defeat qualified immunity.  "Under

11  ordinary circumstances, when the police have only

12  reasonable suspicion to make an investigatory stop, drawing

13  weapons and using handcuffs and other restraints will

14  violate the Fourth Amendment." *Washington v. Lambert*, 98

15  F.3d 1181, 1187 (9th Cir. 1996)("In this nation, all people

16  have a right to be free from the terrifying and humiliating

17  experience of being pulled from their cars at gunpoint,

18  handcuffed, or made to lie face down on the pavement when

19  insufficient reason for such intrusive police conduct

20  exists.")  In "[i]nvestigatory stops or *Terry* stops, we

21  have consistently applied the principle that drawing

22  weapons and using handcuffs or other restraints is

23  unreasonable in many situations." *Robinson*, 278 F.3d at

24  1015.  If Defendants drew their weapons against unarmed,

25  unresisting Plaintiffs and handcuffed them for an

26  investigatory detention after an investigatory stop without

27  probable cause, a reasonable officer in the same

28  circumstances would not believe such actions to be lawful.

**13**

**b.   § 1983 Supervisor Liability**

Defendants are likewise asserting qualified immunity on behalf of Chief Dyer, therefore, to determine if there is a constitutional violation for purposes of satisfying the first immunity prong it must be determined if there is a sufficient causal link between any alleged wrongful conduct and the constitutional violation.

A supervisor can be held liable for excessive force under the Fourth Amendment if he was personally involved in depriving a plaintiff of constitutional rights, or if there is sufficient causal connection between the wrongful conduct of the supervisor and the violation of the constitutional right. *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991) *cert. denied,* 502 U.S. 1074 (1992).  It is not alleged that Defendant Chief Dyer was personally involved in the alleged application of excessive force.  Plaintiffs do not claim he arrested or used excessive force on the day of the alleged incident. However, it is well-established that supervisors, in their supervisory role, can be held liable under a § 1983 claim in their individual capacity for their participation in the deprivation of a constitutional right if there is sufficient casual connection between the supervisor's wrongful conduct and constitutional violation. *See Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (chief of police can be held liable as supervisor for police officers' excessive force); *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998)(chief of police can be held

**14**

1  liable in his individual capacity for participation in
2  deprivation of Plaintiffs' right regarding the use of
3  excessive force by officers); *Phillips v. City of*
4  *Fairfield*, 406 F.Supp.2d 1101 (E.D.Cal. 2005)(chief of
5  police can be held liable in individual capacity under §
6  1983 for his participation in failing to train and
7  discipline officers in regards to excessive force by
8  police).

9      Liability by Chief Dyer only arises when (1) Chief
10 Dyer's own "'culpable action or inaction in the training,
11 supervision, or control of his subordinates' caused the
12 constitutional injury"; for which Chief Dyer "acquiesce[d]
13 in the constitutional deprivations of which [the] complaint
14 is made;" or that (2) Chief Dyer's conduct showed a
15 "reckless or callous indifference to the rights of others."
16 *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101, 1116
17 (E.D.Cal. 2005) *(citing Larez v. City of Los Angeles,* 946
18 F.2d 630, 646 (9th Cir. 1991)).  To establish a causal
19 connection between Chief Dyer's action and the
20 constitutional violation, Plaintiff must allege that Chief
21 Dyer "set in motion a series of acts by others, or
22 knowingly refused to terminate a series of acts by others,
23 which he knew or reasonably should have known, would cause
24 others to inflict the constitutional injury." *Larez*, 946
25 F.2d at 646).

26     Plaintiffs allege that Chief Dyer is responsible for
27 "providing training, supervision, instruction, oversight
28 and discipline concerning the policies, practices, customs,

**15**

and activities" of the entire Fresno Police Department. And

he "established, maintained, encouraged, allowed and/or

ratified a custom, practice or policy of providing

inadequate training, supervision, instruction, oversight,

and discipline to Fresno police officers..." (Doc. 12,

Complaint, ¶ 54.)

A failure to train claim requires that Plaintiffs allege: (1)

they were deprived of a constitutional right, (2) the training

policy amounted to deliberate indifference to the protection of

Plaintiffs' constitutional rights - knowing City of Fresno police

officers would come into contact with; and (3) Plaintiffs

constitutional injuries would have been avoided had Chief Dyer

properly trained his officers. *Blackenhorn* v. *City of Orange*, 485

F.3d 463, 484 (9th Cir. 2007).  Plaintiffs properly assert Chief

Dyer has established a custom or policy of providing inadequate

training, supervision and training to City of Fresno police

officers that caused the Fresno Police Department to use

excessive force to perpetuate constitutional violations of

citizens' Fourth Amendment right to be free from excessive force.

These customs and practices "demonstrate a deliberate

indifference" by all Defendants, including Chief Dyer, to the

"constitutional rights of persons of color."  And these

violations caused the injuries suffered by Plaintiffs. (Doc. 12,

Complaint, ¶ 53.)  Plaintiffs claim, such actions demonstrate a

deliberate indifference to those who come into contact with City

of Fresno police officers.

The alleged serial use of excessive force or a pattern of

failing to discipline police officers in response to justified

**16**

citizen complaints, sufficiently pleads content no reasonable supervisor would engage in. *See Larez*, 946 F.2d at 646.  The absence of evidence to support these allegations must be addressed by dispositive motions.

### i.   Qualified Immunity

While the right to be free from excessive force is clearly established, the precise contours of Chief Dyer's (and the City's) duties as to the Fresno police officers' challenged actions cannot be decided without hearing evidence.  Qualified immunity cannot be established as a matter of law on the allegations of Plaintiffs' first cause of action against Chief Dyer.  Defendants' motion to dismiss on this basis is **DENIED**.

**C.   SECOND CLAIM: § 1983 FOURTH AMENDMENT ARREST WITHOUT PROBABLE CAUSE**

Defendants move to dismiss Plaintiff Arleta's and Andrews' second § 1983 claim, deprivation of liberty by unlawful arrest without probable cause in violation of the Fourth Amendment. Defendants Fresno and Chief Dyer contend in their Motion to Dismiss that Plaintiff Arleta was not deprived of rights under the Fourth Amendment to be free from unreasonable search and seizure because she was not seized. *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  Under the Fourth Amendment, a "seizure" has occurred only when government actors have by means of physical force or show of authority in some way restrained the liberty of a citizen. *Graham v. Connor*, 490 U.S. 386, 395 at fn. 10 (1989)(*citing Terry v. Ohio*, supra 392 U.S. at 19, fn. 16).  The Complaint does not state Arleta was an occupant of the vehicle at

17

the time of detention, nor that she was detained upon approaching the scene of the accident. (Doc. 15, Motion to Dismiss ¶ 4.) The Complaint does not allege Arleta was ever seized.  An analysis into whether City of Fresno police officers, Does 1 through 10, had probable cause for her arrest is moot.

Similarly, Plaintiff Andrews in the facts alleged was never "seized" by Defendants.  He was not an identified occupant of the vehicle at the time of detention nor is it alleged that he was detained when he approached the scene of the accident or when he spoke to Defendants regarding the registration documentation.

Defendants Fresno's and Chief Dyer's Motion to Dismiss the second cause of action for deprivation of liberty on account of unlawful arrest without probable cause as to Plaintiffs Arleta and Andrews is **GRANTED WITH LEAVE TO AMEND.**

D.   **THIRD CLAIM: § 1983 RIGHT TO EQUAL PROTECTION ON ACCOUNT OF RACE**

A claim for equal protection under § 1983 requires Plaintiffs to show that Defendants, under color of law, "acted with an intent or purpose to discriminate against Plaintiffs based on membership in a protected class," in violation of Plaintiffs right to equal protection of the laws under the Fourteenth Amendment. *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998)(*citing Washington v. Davis*, 426 U.S. 229, 239-40 (1976)).  Plaintiffs properly plead in their third cause of action that Defendants violated Plaintiffs' right to equal protection of the law under the Fourteenth Amendment on account of their race. (Doc. 12, Complaint, ¶ 51.)  "The central purpose

18

of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239.  Plaintiffs have asserted that they are persons of color for purposes of satisfying a "protected class" under the Fourteenth Amendment Equal Protection claim.  The facts allege that Plaintiffs are all African-American and none of the police officers at the scene of the incident were persons of color and do not treat persons of color in the same way. (Doc. 12, Complaint, ¶ 41.)  Plaintiffs allege that Defendants acted at all relevant times under the color of the law.  Plaintiffs' Arleta and Andrews third cause of action under a § 1983 claim for the Fourteenth Amendment deprivation of the right to equal protection under the Fourth Amendment is sufficiently pled.

Defendants Chief Dyer's and Fresno's Motion to Dismiss Plaintiffs Arleta's and Andrews' third claim for violation of equal protection of the law under the Fourteenth Amendment is **DENIED.**

**E.   FOURTH CLAIM: § 1983 *MONELL* CUSTOM AND POLICY**

Plaintiffs' fourth claim is a *Monell* **§** 1983 claim against the City of Fresno.  Local governments are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983.[2] *Haugen*

---

[2] "There is certainly no constitutional impediment to municipal liability.  'The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.'" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (quoting *Milliken v. Bradley*, 433 U.S. 267, 291 (1977)).

**19**

1  *v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003)(citing *Monell v.*

2  *Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)) "[O]ur

3  holding...that local governments can be sued under § 1983

4  necessarily decides that local government officials sued in their

5  official capacities are "persons" under § 1983 in those cases in

6  which, as here, a local government would be suable in its own

7  name". *Monell*, 436 U.S. at 691 n.55.  "Local governing bodies,

8  therefore, can be sued directly under § 1983 for monetary,

9  declaratory, or injunctive relief where, as here, the action that

10 is alleged to be unconstitutional, implements or executes a

11 policy statement, ordinance, regulation, or decision officially

12 adopted and promulgated by that body's officers...[or for]

13 deprivations visited pursuant to governmental 'custom' even

14 though such a custom has not received formal approval through the

15 body's official decision making channels." *Id*. 690-91.

16     Although a local government can be held liable for its

17 official policies or customs, it will not be held liable for an

18 employee's actions outside of the scope of these policies or

19 customs.  "[T]he language of § 1983, read against the background

20 of the same legislative history, compels the conclusion that

21 Congress did not intend municipalities to be held liable unless

22 action pursuant to official municipal policy of some nature

23 caused a constitutional tort.  In particular,...a municipality

24 cannot be held liable solely because it employs a tortfeasor.  A

25 _____

26     There is no "basis for concluding that the Eleventh
       Amendment is a bar to municipal liability."  *Id*. (citing
27     *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

28

**20**

municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.   The statute's "language plainly imposes liability on a government that, under color of some official policy, [that] 'causes' an employee to violate another's constitutional rights." *Id.* at 692.

To prevail on a § 1983 complaint against a local government under *Monell*, a plaintiff must satisfy a three-part test: (1) The official(s) must have violated the plaintiff's constitutional rights;[3] (2) The violation must be a part of policy or custom and may not be an isolated incident; and (3) A nexus must link the specific policy or custom to the plaintiff's injury. *See Monell*, 436 U.S. at 690-92.   There are three ways to show a policy or custom of a municipality:

> (1)   By showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity;
>
> (2)   By showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision or
>
> (3)   By showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). A municipal policy may be inferred from widespread practices or

---

[3] "[A] public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights.'" *Brass*, 328 F.3d at 1200 (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979)(citation and internal quotation marks omitted)).

evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded. *Id.*  Municipalities can be held liable "if its deliberate policy caused the constitutional violation alleged." *Blackenhorn*, 485 F.3d at 484.

Plaintiffs claim municipal liability as a result of Chief Dyer's acting as chief of police and the final policymaker.  To determine final policymaking authority, the court must find the individual has authority "*in a particular area, or on a particular issue.*" *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004)(quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997)).  In *Lytle*, the court found that the superintendent of the school district was not constrained by policies other than his own, and he was not subject to review by anyone within the district, which made the superintendent a final policymaker with respect to teacher employment. 382 F.3d at 985.

Plaintiffs assert that Defendant Chief Chief Dyer is "responsible for establishing, ratifying and enforcing policies, practices and customs of the FPD and providing training, supervision, instruction, oversight and discipline concerning the policies, practices, customs, and activities of the entire Fresno Police Department..." (Doc. 12, Complaint, ¶ 11.)  The violations are alleged to be part of policy and custom of Defendants providing inadequate training, supervision and discipline of "Fresno police officers...thereby failing to adequately discourage constitutional violations and tacitly agreeing to violate Plaintiffs' constitutional rights." (Doc. 12, Complaint ¶

**22**

54.)  Plaintiffs allege that such customs, practices and policies "demonstrate a deliberate indifference" by Defendants to the constitutional rights of Fresno citizen and as such caused the constitutional violations, including Plaintiff Arleta's and Andrews' Fourteenth Amendment equal protection constitutional rights. (Doc. 12, Complaint, ¶¶ 52, 55.)  Plaintiffs' allegations of Defendants' failure to train an officer is not limited to a single-incidence, Plaintiffs have sufficiently pled there is a "program-wide inadequacy of training." *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994).

"In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi*, 839 F.2d at 624 (quoting *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986)).  Plaintiffs have alleged more facts than conclusory allegations.  Under a Rule 12(b)(6) motion, an examination of the sufficiency of the complaint not the sufficiency of evidence is at review and Plaintiffs have met such requirements to state a claim against a municipality under § 1983. *See Brockmeier v. Solano County Sheriffs' Dept.*, No. CIV-S-05-2090 MCE EFB PS, 2006 WL 3760276, at *5 fn.4 (E.D.Cal. Dec. 18, 2006).

These allegations are sufficient to state a *Monell* claim against the City of Fresno.

## I.   Qualified Immunity Limitations

Municipal corporations are not afforded immunity from suit

**23**

1  like individuals acting under the color of law. *Owen v. City of*
2  *Independence*, 445 U.S. 622 (1980).  While a municipality cannot
3  be held liable under a *respondeat superior*, it is not afforded
4  qualified immunity. *Leatherman v. Tarrant County Narcotics*
5  *Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993).

6      For reasons stated above, Defendants Chief Dyer's and
7  Fresno's Motion to Dismiss Plaintiff Arleta's and Andrews' § 1983
8  *Monell* fourth cause of action is **DENIED**.

9  **F.   FIFTH CLAIM: § 1985(3) CONSPIRACY TO INTERFERE WITH CIVIL**
10      **RIGHTS**

11      The fifth cause of action is a § 1985(3) claim for violation
12  of all Plaintiffs', including Andrews' and Arleta's, right to be
13  free from conspiracy to interfere with their civil rights on
14  account of their race.

15      A § 1985(3) claim, conspiracy to interfere with civil rights
16  requires three elements: (1) existence of a conspiracy to deprive
17  Plaintiff of equal protection under the law; (2) an act in
18  furtherance of the conspiracy; and (3) a resulting injury. *Addisu*
19  *v. Fred Meyer, Inc.,* 198 F.3d 1130, 1141 (9th Cir. 2000)(*citing*
20  *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998)).  An
21  essential requirement for a § 1985(3) claim is that there must be
22  some racial or otherwise class-based "invidious discriminatory
23  animus" for the conspiracy. *Bray v. Alexandria Women's Health*
24  *Clinic*, 506 U.S. 263, 268-69 (1993)(quoting *Griffin v.*
25  *Breckenridge*, 403 U.S. 88, 102 (1971)).

26

27      Plaintiffs contends two or more Defendants conspired
28  together to act and at all relevant times each was a co-

**24**

1  conspirator of the remaining Defendants, for the purpose of

2  denying Plaintiffs' equal protection of the laws.   The

3  Complaint's fifth cause of action states that under the color of

4  law, Defendants purposely planned and conspired together to deny

5  Plaintiffs equal protection of the laws by (1) denying them the

6  right to be free from unreasonable search and seizure; and (2)

7  denying them the right to not be deprived of life, property or

8  liberty without due process of law.   The Complaint asserts that

9  as a direct and proximate result of the wrongful conduct alleged,

10 Plaintiffs have been damaged.

11     Arleta, however, has not been deprived of such

12 constitutional protections.   The Fourth Amendment right to be

13 free from unreasonable search and seizure is invoked when a

14 person has been "seized." *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

15 Arleta did not allege any facts to show she was subject to a

16 seizure by Defendants at the scene of the alleged incident.   She

17 was merely a bystander and only viewed B.S. and D.S. in the

18 police vehicle. (Doc. 12, Complaint, ¶ 40.)   Nor did Arleta

19 allege any facts for a claim of denial of her Fourteenth

20 Amendment due process right not to be deprived of life, property

21 or liberty.   She never claimed she was an owner of the vehicle

22 seized, nor any other property seized nor that she was personally

23 seized.   Arleta's § 1985(3) cause of action for conspiracy to

24 deny her equal protection under the law does not survive.

25     Likewise, Andrews did not allege in the Complaint that he

26 was "seized" in violation of his right to be free from

27 unreasonable search and seizure.

28

**25**

Andrews has alleged facts that his vehicle was seized after the police allegedly wrongfully prohibited Andrews access to the vehicle to produce the documents.  Andrews also has alleged facts that he was deprived of his vehicle and was forced to pay a large amount of funds to retrieve it after it was wrongfully impounded. Andrews also alleges facts that his car was searched without probable cause.  The alleged facts, may if expounded, be sufficient to support a claim for deprivation of property without due process of law.  However, the property was temporarily detained, not confiscated.

Defendants Chief Dyer's and Fresno's Motion to Dismiss Plaintiffs Arleta's and Andrew's claim for § 1985(3) conspiracy is **GRANTED WITH LEAVE TO AMEND.**

## 6.   EMOTIONAL DISTRESS

**A.   NINTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Defendants move to dismiss Andrews' ninth cause of action[1] for intentional infliction of emotional distress.

Andrews concedes dismissal of his ninth cause of action. *See* Doc. 16, Opposition, p. 2:10-18.

To state a claim for intentional infliction of emotional distress under state law, a plaintiff must allege: 1) extreme and outrageous conduct by the defendant, with the intent or reckless

---

[1] Defendants' Motion to Dismiss incorrectly cites the tenth cause of action as the intentional infliction of emotional distress claim, however under the amended complaint, the cause of action is now the ninth cause of action.  The tenth cause of action is for negligent infliction of emotional distress.

disregard of the probability of causing emotional distress; 2) plaintiff suffered severe emotional distress; and 3) defendant was the cause of the emotional distress. *Cervantez v. J. C. Penney Co.*, 24 Cal.3d 579, 593 (1979), superseded on other grounds in *Melendez v. City of Los Angeles*, 73 Cal.Rptr.2d 469 (Cal.App.2 Dist. 1998).

Defendants Fresno's and Chief Dyer's Motion to Dismiss Plaintiff Vincent Andrews' ninth cause of action for intentional infliction of emotional distress is **GRANTED WITHOUT LEAVE TO AMEND**.

**B.    TENTH CLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**I.    Victim**

To state a claim for negligent infliction of emotional distress under state law plaintiff must plead: 1) serious emotional distress, 2) actually and proximately caused by, 3) wrongful conduct, 4) by a defendant who should have foreseen that the conduct would cause such distress. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n.7 (1987).  It is well settled that negligent infliction of emotional distress is not an independent tort, rather it is the tort of negligence to which the duty of care, breach of the duty, causation and damage elements applies. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.,* 48 Cal.3d 583, 588 (1989); *see also Friedman v. Merck & Co.,* 131 Cal.Rptr.2d 885 (Cal.App.2 Dist. 2003)(no duty to avoid negligently causing emotional distress to another, a duty must arise (1) independently by law and (2) be assumed by defendant or found through some special relationship between the

1  parties).

2      Andrews claims that he suffered distress, aggravation, great
3  humiliation, embarrassment and mental anguish which was
4  proximately caused by Fresno police Defendants negligently
5  charging him with not having proper documents for his vehicle,
6  falsely informing Andrews the vehicle was reported stolen, and as
7  a result seizing the vehicle.  Andrews was unable to use the
8  vehicle and expended funds to retrieve it after it was allegedly
9  unlawfully impounded by Defendants. (Doc. 12, Complaint, ¶¶ 42-
10  47, 74.)  Andrews does not fully allege that Defendants should
11  have foreseen that their conduct would cause such distress.  The
12  claim for negligent infliction of emotional distress claim is
13  insufficient.

14      Defendants Fresno's and Chief Dyer's Motion to Dismiss
15  Plaintiff Andrews' tenth cause of action for negligent infliction
16  of emotional distress is **GRANTED WITH LEAVE TO AMEND.**

17      **II.  Bystander**

18

19      Plaintiff Arleta alleges a bystander negligent infliction of
20  emotional distress claim.  A bystander negligent infliction of
21  emotional distress claim requires the following: "if, but only
22  if", plaintiff (1) is closely related to the injury victim; (2)
23  is present at the scene of the injury - producing event at the
24  time it occurs and is then aware, although not visually aware,
25  that it is causing injury to plaintiff; and (3) as a result
26  suffers serious emotional distress - a reaction beyond that which
27  would be anticipated in a disinterested witness, can a plaintiff
28  claim a bystander negligent infliction of emotional distress

**28**

claim.  *Thing v. La Chusa,* 48 Cal.3d 644, 667-668 (1989); *Bird v. Saenz*, 28 Cal.4th 910, 915 (2002).  For the first element, the phrase "closely related" has been defined to include any relatives residing in the same household, or any parents, siblings, children, and grandparents of the victim. *Moon v. Guardian Postacute Services, Inc.*, 95 Cal.App.4th 1005, 1009 (Cal.App.1 Dist. 2002).  A visual perception of the impact causing injury is not essential as long as it was perceived by other senses, and assuming the event is contemporaneously known to cause the injuries to victim. *Estrada v. Aeronaves de Mexico,* 967 F.2d 1421 (9th Cir. 1992).  A plaintiff can claim damages if she or he observes an injury-producing event in progress, even though not present from the start, so long as the plaintiff is aware of the cause of the injury when finally present. *Ortiz v. HPM Corp.,* 234 Cal.App.3d 178, 183-186 (Cal.App.2 Dist. 1991).

   Arleta was a bystander to the alleged incident and claims she suffered extreme emotional distress proximately caused by the negligent actions of Fresno police Defendants.  The facts she alleges that caused her extreme emotional distress are the verbal death-threats by Defendants directed at her minor children, Plaintiffs B.S and D.S.  She alleges that Defendants by reasonable prudence should have foreseen, that in today's electronic age, such a shout would likely be heard over a cell phone and that the person on the receiving end would become terrified upon hearing such threats. (Doc. 12, Complaint, ¶¶ 13 and 74.)  The Complaint alleges Arleta received a phone call stating that the someone or some persons had her child D.S. and

**29**

guns were drawn.  Through the cell phone, Arleta was able to hear the following threat "If you drop your hands you will be shot." Arleta realized that threat was directed at her fourteen-year old child, Plaintiff D.S., causing her extreme emotional distress. Arleta than arrived at the scene of alleged incident and viewed her two children in the police vehicles. (Doc. 12, Complaint, ¶¶ 36-38, 40.)  It is not clear from the alleged facts where Arleta was in relation to the location of the alleged incident. However, she has facially alleged the bystander negligent infliction of emotional distress claim.

Defendants Fresno's and Chief Dyer's Motion to Dismiss Plaintiff Arleta's tenth cause of action for bystander negligent infliction of emotional distress is **DENIED.**

### 7.   CONCLUSION

(1) Defendant Chief Dyer's motion to dismiss the suit against him in his official capacity is **GRANTED WITHOUT LEAVE TO AMEND.**

(2) Defendants' qualified immunity defense to Plaintiffs first cause of action, § 1983 Fourth Amendment right to be free from excessive force is **DENIED.**

(3) Defendants' 12(b)(6) motion to dismiss for failure to state a cause of action on Plaintiff Arleta Haddox's and Plaintiff Vincent Andrews' § 1983 second cause of action for unlawful arrest under the Fourth Amendment is **GRANTED WITHOUT LEAVE TO AMEND.**

(4) Defendants' 12(b)(6) motion to dismiss for failure to

30

state a cause of action on Plaintiff Arleta Haddox's and Plaintiff Vincent Andrews' § 1983 third cause of action for equal protection under the Fourteenth Amendment is **DENIED.**

(5) Defendants' 12(b)(6) motion to dismiss for failure to state a cause of action on Plaintiff Arleta Haddox's and Plaintiff Vincent Andrews' fourth cause of action regarding § 1983 *Monell* claim is **DENIED.**

(6) Defendants' 12(b)(6) motion to dismiss for failure to state a cause of action on Plaintiff Arleta Haddox's and Plaintiff Vincent Andrews' fifth cause of action regarding § 1985(3) conspiracy is **GRANTED WITH LEAVE TO AMEND.**

(7) Defendants' 12(b)(6) motion to dismiss for failure to state a cause of action on Plaintiff Vincent Andrews' ninth cause of action for intentional infliction of emotional distress is **GRANTED WITH LEAVE TO AMEND.**

(8) Defendants' 12(b)(6) motion to dismiss for failure to state a cause of action on Plaintiff Vincent Andrews' tenth cause of action for negligent infliction of emotional distress is **GRANTED WITH LEAVE TO AMEND.**

(9) Defendants' 12(b)(6) motion to dismiss for failure to state a cause of action on Plaintiff Arleta Haddox's tenth cause of action for bystander negligent infliction of emotional distress is **DENIED.**


IT IS SO ORDERED.

**Dated:     December 27, 2007                    /s/ Oliver W. Wanger**

**31**

UNITED STATES DISTRICT JUDGE