1

2

3

4

5

6                 UNITED STATES DISTRICT COURT

7               EASTERN DISTRICT OF CALIFORNIA

8

| 9  ARLETA HADDOX, individually and ) | 1:07-cv-0241 OWW SMS |
| on behalf of B.S. and D.S. ) | |
| 10 minors; OTIS HADDOX, ) | SCHEDULING CONFERENCE ORDER |
| individually and on behalf of ) | |
| 11 similarly situated class of ) | Discovery Cut-Off: 4/30/09 |
| persons; and VINCENT ANDREWS, ) | |
| 12 individually, ) | Non-Dispositive Motion |
| ) | Filing Deadline: 5/15/09 |
| 13              Plaintiffs, ) | |
| ) | Dispositive Motion Filing |
| 14      v. ) | Deadline: 6/1/09 |
| ) | |
| 15 CITY OF FRESNO, CHIEF JERRY ) | Settlement Conference Date: |
| DYER; DOES 1 through 10, ) | 5/13/09 10:00 Ctrm. 7 |
| 16 inclusive, ) | |
| ) | Pre-Trial Conference |
| 17              Defendants. ) | Date:  8/17/09 11:00 Ctrm. |
| ) | 3 |
| 18 _____ ) | |
| | Trial Date:  9/29/09 9:00 |
| 19 | Ctrm. 3 (JT-7 days) |

20

21  I.   Date of Scheduling Conference.

22       June 13, 2008.

23  II.  Appearances Of Counsel.

24       Bruce Nickerson, Esq., appeared on behalf of Plaintiff.

25       Weakley, Ratliff, Arendt & McGuire, LLP, by Rosemary T.

26  McGuire, Esq., appeared on behalf of Defendants.

27  III.  Summary of Pleadings.

28       1.   On November 13, 2006, between 6:00 and 7:00 p.m. Otis

                              1

1   Haddox, a person of color, was a passenger in a vehicle owned by

2   Vincent Andrews, also a person of color, and driven by B.S., a

3   minor person of color, age 17, who, unknown to Otis Haddox, had a

4   document deficiency, e.g., no drivers license in her possession.

5   D.S., also a minor, age 14, is a person of color and a passenger

6   in the vehicle.

7        2.   While driving on Marks Street, the occupants of the

8   vehicle, all persons of color, became aware that a police cruiser

9   with the markings of the Fresno Police Department was following

10  them.  For two miles the Fresno Police cruiser followed

11  Plaintiffs and created intense feelings of fear, apprehension and

12  severe emotional distress in all occupants of the vehicle.

13       3.   Finally, the car reached its destination, a relative's

14  house.  The vehicle was already parked when suddenly and without

15  warning, the Fresno Police cruiser activated its emergency lights

16  and a voice shouted: "Whoever moves will get shot!"

17       4.   This shouted threat terrified all the persons of color

18  in the vehicle.  B.S., the minor driver, suffers from asthma.

19  The terror created by the two-mile following of her vehicle, the

20  emergency lights, and the shouted threat precipitated an asthma

21  attack.  Unable to breathe, Plaintiff B.S. reached for her asthma

22  pump.

23       5.   Doe 1, a Fresno Policeman, interpreted B.S.'s

24  movements, reaching for her asthma pump, as being a threat.

25  Accordingly, he pulled her from the vehicle, shoved her down on

26  the ground, handcuffed her, and placed her in the patrol car.

27       6.   Fresno Police Defendant Doe 2, pursuant to "a general

28  interest in crime control" then ordered a police dog to sniff all

1  the occupants and the vehicle for illegal drugs.  No illegal
2  drugs were found.

3     7.   Otis Haddox is on disability due to ulcerative sores on
4  his legs.  Fresno Officer Defendant Doe 3 pulled him from the
5  vehicle by his coat, choking him, and placed him in the police
6  cruiser.

7     8.   Plaintiff D.S., a minor, a child aged 14, was terrified
8  and uncertain as to what to do.  Fresno Policeman Defendant Doe 4
9  shouted at her: "Keep your hands up or I will shoot."

10    9.   John Doe 4 then made the minor Plaintiff D.S., a child
11 of 14, exit from the vehicle, get on her knees, whereupon Doe 4
12 pushed her further to the ground, handcuffed her, and placed her
13 in the cruiser.

14    10.  B.S. failed to produce a drivers license.  She and the
15 other Plaintiffs were detained in handcuffs for one and one-half
16 hours in violation of California Vehicle Code § 12801.5(e).  This
17 was the only "document deficiency."  The registration and proof
18 of insurance were in the glove compartment.  (The allegations
19 regarding Plaintiff Arleta Haddox have been deleted because she
20 has died.)

21    11.  Vincent Andrews, the owner of the vehicle, approached
22 the vehicle.  Fresno Police Defendant John Doe 6 falsely informed
23 Plaintiff Andrews that the vehicle was reported stolen from
24 Missouri.  Plaintiffs saw many uniformed and plainclothes persons
25 milling around the vehicle.  None of them were persons of color.

26    12.  Andrews informed the Fresno Police that the vehicle
27 registration was in the dash compartment and offered to find it.
28 None of the Doe Defendants would permit him to look for it.

3

1  Later, the police would falsely state that there was no
2  registration in the vehicle.  Fortunately, Vincent Andrews, owner
3  of the vehicle, possessed a previous traffic ticket issued less
4  than one month before the incident in question.  The ticket makes
5  no mention of any "document deficiency."  Andrews' vehicle was
6  towed and impounded, in violation of California Vehicle Code
7  § 12801.5(e).  Andrews was required to expend money in the sum of
8  $929.00 to retrieve this vehicle.

9     13.  On or about September 12, 2007, around 1:15 a.m.,
10 Stephan A. Smith, a person of color, was driving his vehicle in a
11 lawful manner.  Vincent Andrews was a passenger in the vehicle.
12 Pursuant to a policy and custom wherein Fresno Police stopped
13 persons of color for simply driving their vehicles, the vehicle
14 was stopped for no reason and both men were searched without
15 probable cause.

16    14.  The police recognized Andrews because of the instant
17 lawsuit and laughed and taunted him saying; "Where is the
18 cripple?" referring to Co-Plaintiff Otis Haddox, the uncle of
19 Plaintiff Andrews.

20    15.  The actions of Defendants created intense feelings of
21 fear, apprehension and severe emotional distress in Plaintiff.
22 During the detention, when Defendant police officers learned that
23 Plaintiffs had been visiting the address of Vincent Andrews they
24 laughed and joked about the lawsuit which Plaintiff Andrews had
25 filed.

26    16.  Plaintiff believes and on the basis of that belief
27 alleged that a subsequent search of Plaintiff Andrews' home was
28 in retaliation for him filing this instant lawsuit.  Vincent's

**4**

1  home was searched with a warrant suspecting drugs; they found a

2  gun under his bed and arrested him for it when he came down to

3  claim it.

4       17.   This is a civil rights class action suit for

5  declaratory and injunctive relief and damages brought pursuant to

6  42 U.S.C. §§ 1983, 1985 and 1988, 18 U.S.C. §§ 1961, et seq., the

7  First and Fourth Amendments to the United States Constitution,

8  the Commerce Clause, corresponding provision(s) of the California

9  Constitution, including Article 1, Sections 1, 7 and 13 of the

10  California Constitution, California Civil Code §§ 51, 51.5, 51.7,

11  52 and 52.1, and common law.  The Complaint seeks redress from

12  one or more of the Defendants due to their: (i) arbitrary and

13  unlawful detention because of the race of the Plaintiff Class;

14  (ii) their arbitrary and illegal taking of private property of

15  the Plaintiff Class without just compensation by impounding their

16  vehicles without probable cause, and (iii) conspiring with tow

17  truck drivers and others to defraud Plaintiff Class in violation

18  of the Racketeer Influenced and Corrupt Organizations Statute

19  (RICO) 18 U.S.C. § 1961.

20       18.   The Plaintiff Class consists of all persons of color

21  who have been stopped simply because they were "driving while

22  black or brown" pursuant to a policy established by Defendants

23  and then falsely detained and arrested for failure to possess a

24  valid drivers license and/or failure to have proper vehicle

25  registration (hereinafter "document deficiencies") questioned

26  pursuant to a "general interest in crime control" (said motive

27  prohibited by *City of Indianapolis v. Edmund*, 531 U.S. 32), had

28  their vehicles towed and then impounded, and been charged

1  exorbitant fees to reclaim their vehicles in violation of
2  California Vehicle Code § 12801.5(3) which prohibits arresting
3  anyone solely for being an unlicensed driver.

4       18.  Defendants have violated Plaintiffs' right to be free
5  of unreasonable search and seizure under the Fourth and
6  Fourteenth Amendments to the United States Constitution.

7       19.  Defendants have unjustifiably deprived Plaintiffs of
8  their liberty by unlawfully and maliciously arresting them
9  without probable cause in violation of the Fourth and Fourteenth
10  Amendments to the United States Constitution.

11       20.  Defendants have violated Plaintiff's right to equal
12  protection of the laws under the Fourteenth Amendment to the
13  United States Constitution in that Defendants, and each of them,
14  targeted Plaintiffs and the Plaintiff Class because of their
15  race.

16       21.  Defendants have, under color of law, violated
17  Plaintiffs' rights, privileges and immunities secured by the
18  United States Constitution in violation of § 1983 of Title 42 of
19  the United States Code.

20       22.  Defendants conspired together to act and to fail and
21  omit to act as hereinbefore alleged, for the purpose of (i)
22  impeding, hindering, obstructing, and defeating the due course of
23  justice in Fresno (ii) to deny equal protection of the laws to
24  the Plaintiffs, and (iii) to subject the Plaintiff Class property
25  and persons to unlawful search, seizure, and criminal
26  prosecution.

27       23.  Defendants have violated Plaintiffs' right to be free
28  of unreasonable search and seizure under Article 1, Section 13 of

1  the California Constitution.

2      24.  Defendants have violated Plaintiffs' rights under

3  California Civil Code §§ 51, 51.5, 51.7, by intimidating and/or

4  by interfering with the rights secured by the Constitution or

5  laws of the State of California.

6      25.  Defendants, and each of them, did cause and caused, to

7  be unlawfully seized, Plaintiffs, and the Plaintiff Class by (i)

8  stopping persons for "driving while black or brown," (ii)

9  questioning them for the purpose of "general crime control;"

10 (iii) effecting false arrests of persons who had "document

11 deficiencies" in violation of California Vehicle Code

12 § 12801.5(e), and seizing and impounding their vehicles without

13 due process of law with the intent to inflict serious and severe

14 emotional distress.

15     26.  Defendants, and each of them, inclusive, behaved

16 negligently, including violating California Civil Code § 1714,

17 towards Plaintiffs, causing them to be unreasonably seized,

18 falsely arrested, and subjected to criminal prosecution.

19     27.  Defendants were negligent in their retention policies

20 and training of officers and this inflicted emotional distress.

21     **Defendant's Factual Contentions**

22     1.   On November 13, 2006, at approximately 7:00 p.m.,

23 Fresno Police Officers Jonathan Long and Jesus Salinas were

24 working as a double unit while assigned to the Northwest District

25 Crime Suppression Team, and were patrolling the area of Weber and

26 Clinton.  The Officers pulled behind a green 2003 Ford Expedition

27 at a "yield" sign that was stopped for approximately one minute.

28 Due to this abnormal behavior, Officer Long ran the Arkansas

license plate "795JTH" over the radio.  The dispatcher responded that the plate was from a stolen "Geo" out of Arkansas.

2.   Due to the stolen vehicle hit on the license plate, the officers called for assisting units.  Eventually, the vehicle pulled into a dead end near the intersection of Harvard and Marty.  The driver quickly opened the door, as if to possibly leg bail.  A felony high risk stop was executed by Officers Long and Salinas.  This stop was made for officer safety, while the officers waited for assisting units.  Officers Long and Salinas completed the stop, and detained the occupants of the vehicle so they could verify whether the vehicle was stolen or not. Although the license plates had been listed as stolen by the Crestwood Police Department in Arkansas, the vehicle was not stolen.  When the Crestwood Police Department was contacted they cancelled the stolen status on the license plates.

3.   The driver of the vehicle, Brittney Simpson, a minor, was cited for violation of Vehicle Code § 12500, driving without a valid license.  The other occupants in the vehicle were Deasha Sutton (a minor) and Otis Haddox.  They were released immediately after it was determined the car was not stolen.  Vincent Andrews was not present at the scene.  He is one of the registered owners of the car.

4.   In their Third Amended Complaint ("TAC"), in addition to facts related to the November 13, 2006, incident, Plaintiffs reference a completely separate incident, involving a different party.  Plaintiffs allege that "on or about September 12, 2007, Plaintiff, Stephen A. Smith, a person of color, was driving his vehicle, with Vincent Andrews as a passenger, "in a lawful

8

manner." Plaintiffs allege that "pursuant to a policy and custom wherein Fresno Police stopped persons of color for simply driving their vehicles, the vehicle was stopped for no reason and both men were searched without probable cause." Plaintiffs further allege that the officers (unidentified) recognized Mr. Andrews because of this lawsuit and taunted him saying: "Where is the cripple?" referring to Otis Haddox. Plaintiffs allege that "a subsequent search of Plaintiff Andrew's home was in retaliation for him filing this instant lawsuit." Defendants have no information regarding this alleged contact.

**Defendants' Legal Contentions**

5. The Third Amended Complaint alleges, at paragraph 17, that "the named Plaintiff brings this class action ... on his own behalf and on behalf of all others similarly situated." Pursuant to paragraph 18 of the TAC, "[t]he Plaintiff Class consists of all persons of color who have been stopped simply because they were 'driving while black or brown ...'"

6. When a person sues or is sued as a representative of a class, the court must determine by order whether to certify the action as a class action. Fed. R. Civ. P. 23(a)(1). In class actions, courts require that a "defined identifiable class exists" and "that the class representatives must be members of the class." *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 509 (D. N.M. 2004). In this case, there is no definable class. Furthermore, the Plaintiffs are not members of this class because they were pulled over based on a stolen vehicle hit. Additionally, it cannot be said that questions of law or fact common to the members of the class predominate because every

situation is different when a vehicle is pulled over by a police officer.  As such, there is no indication that individual adjudications in this case would be dispositive of the interests of the other members of the purported class, or would substantially impair or impede the ability of the class members to protect their interests.  Furthermore, there is no indication of a "realistic threat of future injury" that would warrant injunctive relief.  See, *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

        7.    All claims that law enforcement officers have used excessive force, deadly or not, in the course of an arrest, investigatory stop or other seizure of a citizen should be analyzed under the Fourth Amendment and its reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Graham v. Connor*, *supra*, 490 U.S. at 396.  The reasonableness inquiry is an objective one: the question is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  *Id.* at 396-397.

        8.    In this situation, the officers were dealing with a

vehicle that had a stolen vehicle hit on it.  The execution of a
"high risk" felony stop under these circumstances was necessary
and reasonable.

9.  An officer may stop a vehicle and detain the occupants
if he has a reasonable suspicion based on articulable facts that
the vehicle or the person in the vehicle is connected with
criminal activity.  *United States v. Sokolow*, 490 U.S. 1; *United
States v. Ramirez-Sandoval* (9th Cir. 1989) 872 F.2d 1392, 1395.
Factors involved in determining whether a detention was
reasonable include: (a) the severity of the suspected crime; (b)
whether the person being detained is the subject of the
investigation; (c) whether such person poses an immediate threat
to the security of the police or others; and (d) whether such
person is actively resisting arrest.  *Mena v. Simi Valley*, 332
F.3d 1255, 1268 (9th Cir. 2003).  In looking at the totality of
the circumstances, the trier of fact must consider the
intrusiveness of the detention, i.e., the aggressiveness of the
police methods and how much the plaintiff's liberty was
restricted.  *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.
1996).

10.  An officer making a traffic stop may order passengers
to get out of the car pending completion of the stop.  See,
*Maryland v. Wilson*, 519 U.S. 408, 415 (1979).  If a situation
involves an inherent danger, pointing a weapon at a suspect and
handcuffing him does not automatically convert an investigatory
stop into an arrest that requires probable cause.  See,
*Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996).

11.  In this case, the detention of Plaintiffs on November

1  13, 2006, to make a determination as to whether the vehicle was

2  stolen and the precautions taken by the officers for officer

3  safety reasons were necessary and reasonable.  Defendants have no

4  information regarding the allegations concerning Plaintiff,

5  Stephan Smith.

6      12.  Qualified immunity is "'an entitlement not to stand

7  trial or face the other burdens of litigation.'" *Saucier v. Katz*,

8  533 U.S. 194, 200-201 (2001), quoting *Mitchell v. Forsyth*, 472

9  U.S. 511, 526 (1985).  A state actor is entitled to qualified

10 immunity in an action filed pursuant to 42 U.S.C. § 1983 if his

11 or her conduct during a criminal investigation either does not

12 violate a federal constitutional right, or the constitutional

13 right was not clearly established on the date of the alleged

14 violation.  *Saucier v. Katz, supra*, at 201.  Only if a

15 plaintiff's factual allegations establish a violation of the

16 plaintiff's federal rights, then the court must proceed to the

17 second determination of whether the right was "clearly

18 established."  *Id.*  If the law did not put the officer on notice

19 that his conduct would be clearly unlawful, summary judgment

20 based on qualified immunity is appropriate.  *Malley v. Briggs*,

21 475 U.S. 335, 341 (1986).  Qualified immunity protects "all but

22 the plainly incompetent or those who knowingly violate the law."

23 *Id.*

24     13.  In this situation, the officers had a reasonable belief

25 that the subject vehicle had a stolen vehicle hit on it.

26 Therefore, a felony high risk stop was warranted, and it cannot

27 be said that the law put the officers on notice that a felony

28 high risk stop would be clearly unlawful.

1    14.   The Equal Protection Clause ensures that "all persons
2   similarly situated should be treated alike."   *City of Cleburne v.*
3   *Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).   To
4   establish a claim that defendants conspired to deprive plaintiffs
5   of their right to equal protection under 42 U.S.C. § 1985,
6   Plaintiffs have to prove: (1) existence of a conspiracy, (2) for
7   purpose of depriving them, either directly or indirectly, of
8   equal protection of the laws or of equal privileges and
9   immunities under the laws, (3) act in furtherance of conspiracy,
10   and (4) injury in their person or property or deprivation of any
11   right of a citizen of the United States; and (5) the conspiracy
12   must be motivated by some racial or perhaps otherwise class-
13   based, invidious discriminatory animus behind the conspiracy.
14   *Knight v. City of New York*, 303 F.Supp.2d 485 (S.D.N.Y. 2004).

15    15.   In this case, the officers had a valid reason,
16   unrelated to race, to make the felony high-risk stop; thus, the
17   equal protection claims have no merit.

18    16.   Section 1983 permits damages actions against
19   municipalities, which are considered "persons" within the terms
20   of the statute.   *Monell v. Department of Social Services of City*
21   *of New York*, 436 U.S. 658 (1978).   However, a municipality cannot
22   be held liable under § 1983 simply on the basis of respondeat
23   superior.   *Monell v. Department of Social Services, supra*, 436
24   U.S. at p. 691.   Rather, such liability can only be imposed for
25   injuries inflicted pursuant to a governmental "policy or custom."
26   *Monell v. Department of Social Services*, 436 U.S. 658, 691
27   (1978); see also, *City of Canton v. Harris*, 489 U.S. 378, 389
28   (1989).   The existence of a policy, without more, is insufficient

1  to trigger local government liability under Section 1983.  *City*

2  *of Canton, supra*, 489 U.S. at 388-89.

3      17.  With *Monell* claims, Plaintiffs generally have a

4  difficult burden in proving that the alleged unconstitutional

5  conduct was done pursuant to a policy, practice, or custom.

6  There is no evidence that would support Plaintiffs' *Monell* claim.

7      18.  Civil Code § 52.1(a) provides in pertinent part that

8  "(w)henever a person or persons, whether or not acting under

9  color of law, interferes by threats, intimidation, or coercion,

10  or attempts to interfere by threats, intimidation, or coercion,

11  with the exercise or enjoyment by any individual or individuals

12  of the rights secured by the Constitution or laws of the United

13  States, or of the rights secured by the Constitution or laws of

14  this state, ..."  Civil Code § 52.1(b) provides that "(a)ny

15  individual whose exercise or enjoyment of rights secured by the

16  Constitution or laws of the United States, or of rights secured

17  by the Constitution or laws of this state, has been interfered

18  with, or attempted to be interfered with, as described in

19  subdivision (a), may institute and prosecute in his or her own

20  name and on his or her own behalf a civil action for damages."

21  Section 52.1 does not provide any substantive protections.

22  Rather, it enables individuals to sue for damages as a result of

23  constitutional violations.  *Reynolds v. County of San Diego*, 84

24  F.3d 1162, 1170-71 (9th Cir. 1996).

25      19.  The actions of the officers were pursuant to a felony

26  high risk stop, which is standard procedure for a reasonable

27  officer in this situation.

28      20.  Civil Code § 51, part of the Unruh Civil Rights Act,

provides that "(a)ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Civ. Code § 51(b).  Civil Code § 51.7 provides that "(a)ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics.  Civ. Code § 51.7(a).

     21.  The analysis under these sections of the Civil Code is similar to the analysis above regarding Plaintiffs' equal protection claims.  The evidence demonstrates that the officers had a stolen vehicle hit on the vehicle, and based on the plaintiffs' actions, they were forced to take swift action.

     22.  Government Code § 815 states that, except as provided by statute, "(a) public entity is not liable for injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  The direct tort liability of a public entity must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on general tort provisions.  *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183-84

1  (2003).

2      23.   As to the City itself, this cause of action has no
3  validity based on the fact that the Government Code does not
4  allow for a direct negligence action.   In *Munoz v. City of Union*
5  *City*, 120 Cal.App.4th 1077 (2004), the Court of Appeal concluded
6  that a direct tort cause of action against the public entity
7  defendant could not be maintained because there is no existing
8  statute providing for direct tort liability against a public
9  entity.   *Id.* at 1112-1115.

10     24.   The City of Fresno can be vicariously liable for the
11 negligence of its police officers.   Gov. Code § 815.2.   Police
12 officers can be liable for negligence when deciding to use and
13 employ force.   See, *Munoz v. City of Union City, supra*, 120
14 Cal.App.4th at 1101; *Megargee ex rel. Lopez v. Wittman* (E.D.
15 Cal.) 2006 WL 2988945.   However, California case authority makes
16 it clear that police officers do not owe a legal duty in relation
17 to discretionary decisions in conducting investigations and
18 effectuating arrests, and that exposure to negligence liability
19 is limited to the use of force.   See, *Munoz v. City of Union*
20 *City, supra*, 120 Cal.App.4th at 1097-1098; *Adams v. City of*
21 *Fremont*, 68 Cal.App.4th 243, 279-288 (1998); *Williams v. State of*
22 *California,* 34 Cal.3d 18, 23 (1983); *Rose v. County of Plumas,*
23 152 Cal.App.3d 999 (1984).

24 IV.   Orders Re Amendments To Pleadings.

25     1.   The individual police officers identified in
26 Plaintiffs' Third Amended Complaint have never been served;
27 therefore, it is unclear whether amendments to the pleadings may
28 be necessary.

1  V.    Factual Summary.

2      A.   Admitted Facts Which Are Deemed Proven Without Further

3  Proceedings.

4          1.    The parties believe Brittney Simpson is now an

5  adult.   Plaintiff Arleta Haddox has died.   D.S. is a juvenile and

6  Vincent Andrews is an individual.   All were residents of the

7  Eastern District of California at the time of the actions alleged

8  in the complaint.

9          2.    On November 13, 2006, Fresno police officers

10  stopped a green SUV with an Arkansas license plate that was being

11  driven by Brittney Simpson.

12          3.    On November 13, 2006, Brittney Simpson was cited

13  for violation of California Vehicle Code § 12500, driving without

14  a license.

15          4.    The officers involved in the stop were acting in

16  the course and scope of their employment.

17          5.    The officers named were acting under color of law

18  in discharging their duties.

19      B.   Contested Facts.

20          1.    All remaining facts are contested.

21  VI.  Legal Issues.

22      A.   Uncontested.

23          1.    Jurisdiction exists under 28 U.S.C. § 1331 and 42

24  U.S.C. § 1983, et seq.

25          2.    Venue is proper under 28 U.S.C. § 1391.

26          3.    The parties agree that the substantive law of the

27  State of California provides the rule of decision.

28      B.   Contested.

1    　　　　1.　　Whether the conduct of the Defendant officers

2  violated the Plaintiffs' constitutional rights under the Fourth

3  and Fourteenth Amendments.

4    　　　　2.　　Whether the conduct of the Defendant Officers

5  violated the Plaintiffs' rights under state law.

6    　　　　3.　　Whether Defendant City of Fresno had a custom,

7  practice or policy that was deliberately indifferent to

8  Plaintiffs' constitutional rights and was the moving force behind

9  Plaintiffs' alleged violation of their constitutional rights.

10   　　　　4.　　Whether any of the Defendant officers used

11  excessive force in effecting the detention of Plaintiffs.

12   　　　　5.　　The nature and extent of the Plaintiff's injuries

13  and damages, if any.

14  VII. Consent to Magistrate Judge Jurisdiction.

15   　　1.　　The parties have not consented to transfer the

16  case to the Magistrate Judge for all purposes, including trial.

17  VIII.　　Corporate Identification Statement.

18   　　1.　　Any nongovernmental corporate party to any action in

19  this court shall file a statement identifying all its parent

20  corporations and listing any entity that owns 10% or more of the

21  party's equity securities.  A party shall file the statement with

22  its initial pleading filed in this court and shall supplement the

23  statement within a reasonable time of any change in the

24  information.

25  IX.  Discovery Plan and Cut-Off Date.

26   　　1.　　The initial disclosures shall be made by the parties on

27  or before July 14, 2008.

28   　　2.　　Plaintiffs' motion for class certification shall be

18

filed on or before August 13, 2008.  That motion will be heard on September 15, 2008.

3.   The parties are ordered to complete all non-expert discovery on or before February 23, 2009.

4.   The parties are directed to disclose all expert witnesses, in writing, on or before March 9, 2009.  Any supplemental or rebuttal expert disclosures will be made on or before April 9, 2009.  The parties will comply with the provisions of Federal Rule of Civil Procedure 26(a)(2) regarding their expert designations.  Local Rule 16-240(a) notwithstanding, the written designation of experts shall be made pursuant to F. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.  Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

5.   The parties are ordered to complete all discovery, including experts, on or before April 30, 2009.

6.   The provisions of F. R. Civ. P. 26(b)(4) shall apply to all discovery relating to experts and their opinions. Experts may be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions.

X.   Pre-Trial Motion Schedule.

1.   All Non-Dispositive Pre-Trial Motions, including any discovery motions, will be filed on or before May 15, 2009, and heard on June 19, 2009, at 9:00 a.m. before Magistrate Judge Sandra M. Snyder in Courtroom 7.

19

1      2.    In scheduling such motions, the Magistrate

2 Judge may grant applications for an order shortening time

3 pursuant to Local Rule 142(d).  However, if counsel does not

4 obtain an order shortening time, the notice of motion must comply

5 with Local Rule 251.

6      3.    All Dispositive Pre-Trial Motions are to be

7 filed no later than June 1, 2009, and will be heard on July 13,

8 2009, at 10:00 a.m. before the Honorable Oliver W. Wanger, United

9 States District Judge, in Courtroom 3, 7th Floor.  In scheduling

10 such motions, counsel shall comply with Local Rule 230.

11 XI.  Pre-Trial Conference Date.

12     1.    August 17, 2009, at 11:00 a.m. in Courtroom 3, 7th

13 Floor, before the Honorable Oliver W. Wanger, United States

14 District Judge.

15     2.    The parties are ordered to file a Joint Pre-

16 Trial Statement pursuant to Local Rule 281(a)(2).

17     3.    Counsel's attention is directed to Rules 281

18 and 282 of the Local Rules of Practice for the Eastern District

19 of California, as to the obligations of counsel in preparing for

20 the pre-trial conference.  The Court will insist upon strict

21 compliance with those rules.

22 XII. Trial Date.

23     1.    September 29, 2009, at the hour of 9:00 a.m. in

24 Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger,

25 United States District Judge.

26     2.    This is a jury trial.

27     3.    Counsels' Estimate Of Trial Time:

28          a.    5-7 days.

20

1       **4.    Counsels' attention is directed to Local Rules**
2   **of Practice for the Eastern District of California, Rule 285.**
3   **XIII.       Settlement Conference.**
4       **1.    A Settlement Conference is scheduled for May 13, 2009,**
5   **at 10:00 a.m. in Courtroom 7 before the Honorable Sandra M.**
6   **Snyder, United States Magistrate Judge.**
7       **2.    Unless otherwise permitted in advance by the**
8   **Court, the attorneys who will try the case shall appear at the**
9   **Settlement Conference with the parties and the person or persons**
10  **having full authority to negotiate and settle the case on any**
11  **terms at the conference.**
12      **3.    Permission for a party [not attorney] to attend**
13  **by telephone may be granted upon request, by letter, with a copy**
14  **to the other parties, if the party [not attorney] lives and works**
15  **outside the Eastern District of California, and attendance in**
16  **person would constitute a hardship.  If telephone attendance is**
17  **allowed, the party must be immediately available throughout the**
18  **conference until excused regardless of time zone differences.**
19  **Any other special arrangements desired in cases where settlement**
20  **authority rests with a governing body, shall also be proposed in**
21  **advance by letter copied to all other parties.**
22      **4.    Confidential Settlement Conference Statement.**
23  **At least five (5) days prior to the Settlement Conference the**
24  **parties shall submit, directly to the Magistrate Judge's**
25  **chambers, a confidential settlement conference statement.  The**
26  **statement should not be filed with the Clerk of the Court nor**
27  **served on any other party.  Each statement shall be clearly**
28  **marked "confidential" with the date and time of the Settlement**

Conference indicated prominently thereon.  Counsel are urged to request the return of their statements if settlement is not achieved and if such a request is not made the Court will dispose of the statement.

     5.   The Confidential Settlement Conference Statement shall include the following:

          a.   A brief statement of the facts of the case.

          b.   A brief statement of the claims and defenses, i.e., statutory or other grounds upon which the claims are founded; a forthright evaluation of the parties' likelihood of prevailing on the claims and defenses; and a description of the major issues in dispute.

          c.   A summary of the proceedings to date.

          d.   An estimate of the cost and time to be expended for further discovery, pre-trial and trial.

          e.   The relief sought.

          f.   The parties' position on settlement, including present demands and offers and a history of past settlement discussions, offers and demands.

XIV. Request For Bifurcation, Appointment Of Special Master, Or Other Techniques To Shorten Trial.

     1.   The City of Fresno will seek to bifurcate *Monell* and any amount of punitive damages to be tried in separate phases in a continuous trial before the same jury.

XV.  Related Matters Pending.

     1.   There are no related matters.

XVI. Compliance With Federal Procedure.

1        **1.   The Court requires compliance with the Federal**

2    **Rules of Civil Procedure and the Local Rules of Practice for the**

3    **Eastern District of California.   To aid the court in the**

4    **efficient administration of this case, all counsel are directed**

5    **to familiarize themselves with the Federal Rules of Civil**

6    **Procedure and the Local Rules of Practice of the Eastern District**

7    **of California, and keep abreast of any amendments thereto.**

8    **XVII.     Effect Of This Order.**

9        **1.   The foregoing order represents the best**

10   **estimate of the court and counsel as to the agenda most suitable**

11   **to bring this case to resolution.   The trial date reserved is**

12   **specifically reserved for this case.   If the parties determine at**

13   **any time that the schedule outlined in this order cannot be met,**

14   **counsel are ordered to notify the court immediately of that fact**

15   **so that adjustments may be made, either by stipulation or by**

16   **subsequent scheduling conference.**

17       **2.   Stipulations extending the deadlines contained**

18   **herein will not be considered unless they are accompanied by**

19   **affidavits or declarations, and where appropriate attached**

20   **exhibits, which establish good cause for granting the relief**

21   **requested.**

22       **3.   Failure to comply with this order may result in**

23   **the imposition of sanctions.**

24

25

26   IT IS SO ORDERED.

27   **Dated:   June 14, 2008**          _____ **/s/ Oliver W. Wanger** _____
                                          UNITED STATES DISTRICT JUDGE

28